**UNITED STATES v. HILDE-BRANDT et al.**

No. 6282.

United States District Court, D. Rhode Island.

May 20, 1953.

Edward M. McEntee, U. S. Atty., and Joseph L. Breen, Asst. U. S. Atty., Providence, R. I., for plaintiff.

Edward F. McElroy, Providence, R. I., for defendants.

GIBSON, District Judge.

Statement of the Case

This cause came before this Court for hearing on May 8, 1953, on a motion entitled "Motion to Vacate, Set Aside or Correct Sentence". This motion was filed in this Court on April 6, 1953. The petitioners, Howard Hildebrandt and Robert LaPlante, were arrested on May 21, 1952, on charges the gist of which was armed robbery committed on Government-owned property. The petitioner Hildebrandt was arrested in New York City and arraigned before a United States Commissioner for the Southern District of New York. On May 22, 1952, he was returned to the District of Rhode Island. On May 21, 1952, the petitioner LaPlante was arrested in Providence, Rhode Island. On June 4, 1952, these two men were indicted on an indictment which contained four counts for violations of Sections 371, 2111, 2112 and 13 of Title 18 U.S.Code. Warrants for the arrest of each defendant were issued on June 4. On June 9, each defendant appeared in Court and plead not guilty. Bail was fixed in the amount of $30,000.00 for each defendant. At the time of pleading of not guilty, they were represented in Court by Attorney Michael DeCiantis, a member in good standing of the Rhode Island Bar. On June 12th, a Plea in Abatement was filed on behalf of the defendants by Attorney DeCiantis. On June 16th, the

578

title of the Plea in Abatement was amended to read "Motion to Dismiss", and the motion was argued on the 16th before Judge Leahy. On June 23rd, the defendants' Motion to Dismiss was denied. On June 24th, the defendants, through their counsel, Mr. DeCiantis, withdrew their pleas of not guilty as to Counts 1 and 2 and entered a plea of guilty to both of said counts. The other counts in the indictment were dismissed. The defendants were each sentenced to a term of five years' imprisonment on Count 1 and fifteen years on Count 2, the terms to run consecutively. On July 16, counsel DeCiantis filed Motions to Reduce Sentence. The motions to reduce sentence were identical and read as follows:

"Motion to Reduce Sentence

"Now comes the defendant, Howard Hildebrandt, and moves that the sentences imposed upon him on June 24, 1952, on counts numbered 1 and 2 in the indictments returned by the Grand Jury on June 4, 1952, be reduced by this Honorable Court on the following grounds:

"1. That the confession made by the said defendant was involuntary;

"2. That the said confession was obtained by the agents of the Federal Bureau of Investigation having authority over him, upon a promise that the defendant would be charged only with armed robbery;

"3. That the confession was obtained by the agents of the Federal Bureau of Investigation upon a promise that leniency would be recommended to the court.

"4. That the defendant, relying upon the promises made by the agents of the Federal Bureau of Investigation, entered a plea of guilty.

"5. That upon entering of a plea of guilty and the public statement made by the District Attorney with respect to the admission of guilt by the defendant, (see full statement of District Attorney's Presentation, Pg. 10) the defendant was without that protection which the law and the United States Constitution affords in criminal cases."

On July 29, the defendants' Motions to Reduce Sentence came on for hearing, at which time the Government filed a Motion to Dismiss Defendants' Motions to Reduce Sentence. On July 31st, Attorney Robert R. Afflick entered his appearance as Associate Counsel for each defendant, and on August 1st, Motion for Leave to Withdraw Plea of Guilty and Enter Plea of Not Guilty was filed by each of the defendants. On August 5th, Attorney Afflick requested leave to withdraw defendants' Motion to Withdraw Pleas of Guilty and Enter Pleas of Not Guilty. This motion was granted. Thereupon Attorney Afflick moved for the taking of oral testimony of Messrs. Hildebrandt and LaPlante on the defendants' Motion to Reduce Sentence. On August 6th, the Court denied the defendants' Motion to Present Oral Testimony and, after hearing arguments of counsel, denied defendants' Motion to Reduce Sentence.

Since some of the allegations in the Motion to Reduce Sentence were very similar to the allegations contained in the petition filed April 6, 1953, and inasmuch as there had been no opportunity for the petitioners Hildebrandt and LaPlante to have a Court hear their version of the alleged threats or promises by which they alleged their confessions and pleas of guilty were secured, this Court ordered Messrs. Hildebrandt and LaPlante brought before it, and on May 5, 1953, issued Writs of Habeas Corpus to secure the appearance of the petitioners before this Court on May 8, 1953, at ten o'clock. Likewise, on May 5th the Court appointed Edward F. McElroy, a member in good standing of the Rhode Island Bar, to represent the defendants at the hearing on the petition, which hearing was to take place on May 8th. This petition was heard before this Court on May 8th, with Attorney McElroy representing the petitioners, aided by Attorney Robert Afflick. At this hearing, the petitioners took the stand and testified. Petitioner Hildebrandt's brother, Walter, testified and petitioner LaPlante's father testified, all for the petitioners. Special Agents W. Willis Fisher, James H. Foley and Lawrence G. Healey of the FBI testified.

## Findings of Fact

The petitioners' first claim is that the attorney for the defense, Michael DeCiantis, who was, and is, a member in good standing of the Rhode Island Bar, refused to appear for arraignment and indictment procedures. This Court finds that Mr. Hildebrandt was arrested in New York City on May 21, 1952, sometime between four and five p. m., and was taken immediately by the arresting officers to headquarters of the Federal Bureau of Investigation in New York City. At about 6:50 p. m., he telephoned his home in East Warwick, Rhode Island, and at that time talked with his wife. Attorney DeCiantis happened to be at Mr. Hildebrandt's home at that time and talked with Mr. Hildebrandt, and Mr. Hildebrandt did not request Attorney DeCiantis to come to New York but advised him that he had told his story and would be brought back to Rhode Island the next day. He was returned to Rhode Island on May 22nd, after being arraigned before the United States Commissioner in New York City. The docket entries and Court records show that Attorney DeCiantis appeared at all arraignments and Court proceedings for these petitioners that took place in Rhode Island. The Court further finds that Mr. Hildebrandt was never refused permission to contact counsel after his arrest.

The second allegation of the petitioners is that Attorney DeCiantis refused to accompany the petitioners, well knowing that representatives from the Federal Bureau of Investigation were removing the accused from custody of the United States Marshals in order to inflict mental and moral torture on the persons of the accused. There is no evidence to substantiate any such claim.

The third claim is that petitioner Robert LaPlante was commanded to disrobe and forced under threat to stand through a lengthy and meaningless barrage of questions and accusations, in which threat to the safety and well-being of the defendants and their respective families was accompanied by threats of lighted cigarettes held close to the person of the disrobed prisoner. Petitioner LaPlante took the stand and testified that he was arrested on May 21, 1952, in the latter part of the afternoon; that he was then taken to the FBI Headquarters in Providence, Rhode Island, where he was questioned until midnight; that during this questioning he was forced to strip and that one of two agents, namely, Lawrence Healey, held lighted cigarettes close to his breast in order to secure a confession from him. The other agent, whom he could not identify, threatened to punch him in the mouth. Agent Healey testified that no such event took place; that after his arrest LaPlante was, in fact, stripped but solely for the purpose of searching his clothes for hidden articles, and his clothes were promptly returned to him; that he was not stripped over five minutes; that at no time were lighted cigarettes held close to him or anything else done to secure a confession, and that, in fact, no confession was secured at that time or until several weeks later. The Court does not believe the testimony of the petitioner in this regard, nor does the Court find any other evidence of undue physical force used by officers of the law against LaPlante.

The petitioners' next claim is that petitioner Hildebrandt was removed from the custody of the United States Marshals and taken, handcuffed and at gunpoint, into a secluded woodland at or near West Greenwich, Rhode Island, by Federal Officers Foley and Fisher, on the assumption that under such threat of bodily harm a confession might be obtained, and that Federal Officer Foley told Hildebrandt that, "I'd hate to have to shoot you, but you wouldn't be the first one I've shot." Petitioner Hildebrandt took the stand and testified as to this episode. He testified that while he was being returned from New York to Rhode Island, after his arraignment before the United States Commissioner for the Southern District of New York, he and his convoy stopped at a road intersection at West Greenwich, Rhode Island. There the petitioner, the United States Marshal and FBI Agents from the New York office were joined by FBI Agents from the Boston office. Hildebrandt testified that he was forced to don coveralls and go into the woods, ostensibly

to search for hidden money, and that after he was in the woods, Agent Foley had a gun and told him, "I'd hate to have to shoot you, but you wouldn't be the first one I've shot." As to this episode, Agents Foley and Fisher, who were present on this return of Hildebrandt from New York to Rhode Island, testified:

(a) That Agent Foley did not go into the woods;

(b) That it was Agent Fisher who was in the woods;

(c) That Agent Foley stayed with Marshal Carroll in the vehicle while the others of the party did go into the woods and search for money alleged to have been hidden there.

During the course of the hearing, when it appeared to Hildebrandt that Foley had not been in the woods, he then intimated that Foley had threatened to shoot him in the car. This was a direct variance from his earlier testimony and his allegation in the petition. This Court does not believe Mr. Hildebrandt's testimony in this matter. The Court finds that there was no threat to shoot Mr. Hildebrandt by Agent Foley, or by any other agent.

The last allegation in the petition that is pertinent to this case is that the Federal Agents dictated a detailed account of what was believed by them to be the commission of a crime to a public stenographer and then employed threat and mental torture to force one of the accused, namely, Hildebrandt, to acknowledge it as authentic. The evidence discloses that both Hildebrandt and LaPlante gave a detailed statement to stenographers who work for the FBI; that neither Hildebrandt nor LaPlante were asked to sign the statement; nor, indeed, that they had a chance to read it over after it was given. There is no evidence that this detailed account was ever used as a form of mental torture or as a threat to force Hildebrandt to acknowledge it as authentic. The Court does not sustain this contention.

During the hearing, the petitioners, particularly Hildebrandt, claimed that he was led to confess and to plead guilty to two counts of the indictment because he had

been promised that if he plead guilty he would get a seven-year sentence and, in addition, would get probation. Hildebrandt's testimony as to who actually made this promise was not very definite. However, he apparently meant to claim that Agent Foley was the one who made the promise. Agents Foley, Fisher and Healey, however, denied any promises were ever made, to their knowledge.

In view of the general tenor of Hildebrandt's testimony, the Court does not believe Mr. Hildebrandt's testimony in this regard and finds there were no promises made by anyone in authority, or in apparent authority, as to what sentence the respondents could expect if they plead guilty.

Petitioner LaPlante was much less definite in his contention of promises as to length of sentence, and his father stated that he knew of no promises. The Court finds that there were no promises made to either petitioner by anyone in authority, or in apparent authority.

### Conclusion

The petitioners having failed to sustain the allegations of their petition as to promises, threats or refusal of an attorney, the petition is hereby denied.